**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP M. HOPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-4263 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| DENIS MCDONOUGH, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Philip M. Hopkins brings this action against defendant Denis McDonough, in his official capacity as Secretary of the Department of Veterans Affairs, claiming that his former employer, the VA's Great Lakes Consolidated Mail Outpatient Pharmacy, discriminated against him both on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, subjected him to a hostile work environment on the basis of his race and his age in violation of Title VII and the ADEA, and retaliated against him for protected activity under Title VII and the ADEA. (Dckt. #71 ¶1).

Defendant filed a motion for summary judgment, (Dckt. #100), along with the required Rule 56.1 Statement of Material Facts, (Dckt. #102 ("DSOF")), and supporting Memorandum, (Dckt. #101). Plaintiff filed a responsive Memorandum, (Dckt. #114), Rule 56.1 Statement of Material Facts, (Dckt. #113 ("PSOF")), which included both a statement of additional material facts *and* his response to defendant's statement of material facts.[1] Defendant replied, (Dckt.

---

[1] The Court, within its discretion, will not strike this document despite the fact that plaintiff combined his statement of additional material facts and his response to defendant's statement of material facts in derogation of Local Rule 56.1(b), which requires the filing of a *separate* response to defendant's statement of facts and statement of additional material facts. The Court will cite the paragraph number of

1

#120), and provided an accompanying response to the PSOF, (Dckt. #121). As such, this motion is ripe for disposition and, for the reasons stated below, the Court grants summary judgment in favor of defendant on each of plaintiff's claims.

## I.     LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), *quoting* Fed.R.Civ.P. 56(c); *see* Fed.R.Civ.P. 56(a). Disputed issues of fact are material only if they are outcome determinative. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Evidence considered on a summary judgment motion "need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016); *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Furthermore, courts do not weigh the evidence or resolve conflicts in the record in a summary judgment proceeding; instead, they review the evidence presented in the light most favorable to the non-moving party and draw

---

the PSOF when referring to plaintiff's statement of material facts and it will cite to the page number of the PSOF (instead of the paragraph number) when referencing plaintiff's response to defendant's statement of material facts.

all reasonable inferences in its favor.  *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*,

714 F.3d 449, 452 (7th Cir. 2013).  Summary judgment is granted only "if no reasonable trier of

fact could find in favor of the non-moving party."  *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th

Cir. 2012) (internal quotes and citation omitted).

## II.     FACTUAL RECORD

### A.    Plaintiff's Employment at CMOP

In May of 2009, plaintiff, an African American man and military veteran, began working

for the VA as a materials handler at the Great Lakes' Consolidated Mail Outpatient Pharmacy

("CMOP").  PSOF ¶1; DSOF ¶¶1, 3.  The CMOP is a prescription fulfillment center for mailing

out prescriptions to veterans across the country.  DSOF ¶5.  As of 2012, plaintiff's direct

supervisor was Inventory Management Specialist Justin Simon, who oversaw plaintiff's working

schedule and performance reviews.  PSOF ¶¶3-4.  From 2015 to 2017, Simon reported to

Associate Director Cheryl Kohutynski and Director Steven Steinwandt.  *Id*. ¶4.  At all relevant

times, all of plaintiff's supervisors were white.  *Id*.

From 2011 through 2015, plaintiff consistently received positive performance reviews of

either "fully successful" or "exceptional."  *Id*. ¶3.  Plaintiff applied for numerous internal job

vacancies or promotions during that period.  DSOF ¶58.  In spite of his positive reviews, plaintiff

was not selected for any role he applied to.  PSOF ¶3; DSOF ¶58.  Plaintiff believed he was not

selected for those positions because of his race and age.  DSOF (Ex. A, at 55-56).

In 2014, CMOP employees unionized, and plaintiff began serving as a union

representative.  PSOF ¶¶1, 18.  Shortly thereafter, CMOP offered its employees the opportunity

to work compressed work schedules ("Compressed Schedule"), meaning employees could work

longer daily shifts in order to take one Friday off every two weeks.  *Id*. ¶18; DSOF (Ex. H, at

360-62).  Plaintiff took on a Compressed Schedule so that he could care for his father-in-law and

tend to union activities on his available Fridays.  PSOF ¶18; DSOF ¶¶33-34.  Plaintiff was the

only materials handler at CMOP to opt into a Compressed Schedule at the time.  DSOF ¶34.

### i. Plaintiff and his coworkers contacted then-Congressperson Tammy Duckworth regarding CMOP's workplace practices.

Seeking reform for what they viewed as systemic racism at CMOP, plaintiff and several

co-workers decided to take action in the Fall of 2015.  Plaintiff, for his part, wrote two letters to

then-Congressperson Tammy Duckworth, expressing concern over CMOP's "working

conditions and hiring practices" of black veterans and employees.  PSOF ¶9.  In response,

Duckworth or her staff met with plaintiff and other CMOP employees on November 20, 2015.

*Id.*[2]  On April 12, 2016, Duckworth wrote to the VA Undersecretary to express her concerns over

CMOP's workplace practices.  PSOF ¶11 (Ex. 12).  Duckworth specifically cited her staff's

meeting with "seven gentlemen" who provided evidence warranting an investigation into

CMOP's conduct in order to restore employee confidence in CMOP's leadership.  *Id*.  Her letter

did not name any CMOP employees.  *Id*.  Duckworth's letter did, however, repeatedly warn the

Undersecretary about the ramifications for whistleblower retaliation.  *Id*.

### ii. Plaintiff was reprimanded after a January 2016 confrontation with two coworkers.

According to plaintiff, on January 27, 2016, he approached two female co-workers, Juana

Recendez and Lupe Carrasco.  PSOF ¶17.  Plaintiff maintains that he believed that Carrasco was

forced to return to work early from caring for an ill family member and sought to inform her of

her right to union representation.  *Id*.

---

[2] Paragraph 9 of PSOF also asserts that plaintiff and six other CMOP employees met with Duckworth in March 2016 but, as defendant's objection notes, (Dckt. #121 at 9), plaintiff does not attach any evidence to document this meeting.

Recendez and Carrasco, however, reported to CMOP management that plaintiff approached them to harass and intimidate them so that they would not testify at a VA Merit Systems Protection Board ("MSPB") panel regarding the termination of a black co-worker. PSOF ¶15; DSOF ¶8. In response to their report, Steinwandt ordered Kohutynski to investigate the incident. DSOF ¶9.

Steinwandt, however, ultimately conducted the initial investigation and interviewed plaintiff, Carrasco, and Recendez about the incident. *Id*.; PSOF ¶15. Steinwandt testified that Carrasco and Recendez separately told Steinwandt that they believed plaintiff approached them in order to stop their testimony at the hearing during their February 2016 interviews. DSOF ¶¶9-11. Specifically, Carrasco told Steinwandt that plaintiff said "he knew management was making her and [Recendez] tell lies and that they would both be terminated if they went to court and lied" and that she believed plaintiff was "trying to scare her into not testifying." DSOF ¶10 (Ex. D, at 236; Ex. F). According to Carrasco, plaintiff told her that if she testified and lied, the terminated employee would come back with "a big lawyer" to "get even with everyone." DSOF ¶10 (Ex. D, at 236; Ex. F). Likewise, Recendez told Steinwandt that plaintiff said "management was making [her and Carrasco] tell lies and they were going to be fired." DSOF Ex. 11 (Ex. D, at 236; Ex. F). Steinwandt also interviewed plaintiff, who denied Carrasco and Recendez's characterization of their conversation and explained instead that he approached his co-workers to advise them of their right to union representation, *i.e.*, their "Weingarten Rights." PSOF ¶17; DSOF ¶12.

After the conclusion of the initial investigation, on March 18, 2016, Kohutynski proposed reprimanding plaintiff for conduct unbecoming a federal employee upon concluding that plaintiff's statements caused his coworkers to feel threatened and intimidated. DSOF ¶¶18-19.

On March 25, 2016, plaintiff responded to the proposed reprimand by providing additional information and witnesses to the encounter. *Id*. ¶20. Kohutynski responded by conducting additional fact-finding. *Id*. ¶¶20-21. Ultimately, plaintiff was issued a formal reprimand for conduct unbecoming a federal employee on April 7, 2016. *Id*. ¶¶26-27. Plaintiff concedes that no employee who was involved in the factfinding or eventual reprimand ever referenced his race, age, or protected activities during the process. DSOF ¶29; PSOF, at pp. 24-25; *see* DSOF (Ex. A, at 26-28, 30-31). Plaintiff further concedes that he knew of no other employees accused of intimidating coworkers who were treated differently than he was. DSOF (Ex. A, at 31).

### iii. Plaintiff's supervisors revoked his Compressed Schedule effective March 21, 2016.

As mentioned above, plaintiff took on a Compressed Schedule in order to help care for his father-in-law and tend to his union duties. PSOF ¶18; DSOF ¶¶33-34. After beginning his term as CMOP director in 2016, Steinwandt asked Simon to evaluate the facility's operational needs, including plaintiff's use of a Compressed Schedule. DSOF ¶¶35-36; PSOF ¶19. Around February 2016, CMOP hired an additional materials handler whose shift would overlap with plaintiff's. PSOF ¶¶19, 21. Although plaintiff believed his continued use of a Compressed Schedule was mutually beneficial to both CMOP and his personal responsibilities, *id*., Simon told plaintiff that his bi-weekly Friday absences left CMOP short-staffed and would continue to do so even after the new employee started. PSOF ¶38. Around that time, Simon told Steinwandt that he believed plaintiff's Compressed Schedule hurt productivity. DSOF ¶36.

Donald Engling, a corporate HR representative from the VA, testified that the VA's organizational needs are the primary factor in deciding whether to revoke an employee's use of a Compressed Schedule. DSOF (Ex. H, at 332). Per VA policy, although an employee's personal needs are considered, "[d]ecisions on [Compressed Schedules] will be made based on valid

6

operational needs." *Id*. at 331-32; 362. Whenever an employee's schedule is changed from a Compressed Schedule to a standard schedule, their union should be notified. *Id*. at 332.

On February 28, 2016, Simon e-mailed plaintiff to inform him that his Compressed Schedule would be terminated as of March 21, 2016, for operational reasons and that he would resume working every Friday as a result. DSOF ¶37. Plaintiff's standard shift also reverted to 6:30 a.m. through 3:00 p.m. *Id*. Steinwandt, Kohutynski, and two representatives from plaintiff's union were copied on that e-mail. *Id*.; *see* (Dckt. #121 (Def. Resp. to PSOF ¶20)). Simon's e-mail also notified plaintiff that CMOP planned to hire an additional materials handler to work a shift from 10:30 a.m. through 7:00 p.m. *Id*. On March 6, 2016, plaintiff responded to the February 28 e-mail notification by informing Simon that he took on the Compressed Schedule to attend to personal family, medical, and union responsibilities. DSOF (Ex. I). Nonetheless, CMOP proceeded with its previously announced plan and revoked plaintiff's Compressed Schedule effective March 21, 2016. PSOF ¶¶22-23.

### iv. Evidence pertaining to plaintiff's hostile work environment claim based on his age.

Plaintiff described CMOP as a workplace where employees regularly yelled at each other and where two co-workers (Cassidy Casey and Lupe Carrasco) made "snide comments" which plaintiff interpreted to be about his age. *See* DSOF (Ex. A, at 38-42); PSOF ¶24. Moreover, on April 18, 2016, plaintiff formally complained to Simon that Casey directed an age-related comment toward him during a verbal altercation between the two. *Id*.; DSOF (Ex. L, at 380). Specifically, Casey told plaintiff: "You are [fifty-nine] years old and you should know better." *Id*. The conduct of plaintiff's co-workers led plaintiff to believe that he worked in a hostile workplace at CMOP. PSOF ¶24.

7

Simon responded to the complaint by speaking with Casey, plaintiff, and Pamela Moret, a co-worker who witnessed the statement and confirmed plaintiff's recollection of the incident. DSOF (Ex. D, at 234); *see* PSOF ¶¶24-26. Although plaintiff believes that no action came from his report, Simon testified that he admonished Casey to cease such behavior and told both employees that they should not speak to each other in that way. *Id*. Simon did not escalate the situation to his superiors. *See* DSOF (Ex. D, at 234-35). Even so, plaintiff testified that neither Casey nor any other co-worker made further comments about plaintiff's age during his employ. *Id*. (Ex. A, at 40).

### v. On March 23, 2016, plaintiff engaged defendant's formal EEO process by contacting an EEO counselor at the VA.

Plaintiff contacted an Equal Employment Office ("EEO") counselor on March 23, 2016, and made a formal EEO complaint on June 25, 2016. DSOF ¶75; (Exs. CC, DD). Plaintiff claimed that CMOP: (1) retaliated against him by revoking his Compressed Schedule on March 21, 2016; (2) subjected him to a factfinding and eventual reprimand on April 7, 2016; and (3) wrongfully subjected him to harassment/hostile work environment culminating in Casey's comment about his age on April 18, 2016. *Id*. (Ex. CC). In the form section titled "Date of Occurrence," plaintiff listed three distinct dates of occurrence and did not otherwise declare that CMOP's discrimination or reprisal was continuing or ongoing. *Id*. Plaintiff did not amend or add claims to his complaint during the administrative process.

The VA investigated the claims plaintiff raised in his four-part EEO complaint and, on August 10, 2016, the VA provided plaintiff a report on its investigation. *Id*. (Exs. L, DD). Plaintiff exercised his right to a hearing before an Equal Employment Opportunity Commission Administrative Judge, who granted summary judgment to the VA. *Id*. ¶77. Plaintiff appealed to the EEOC, which affirmed the VA's decision. *Id*. (Ex. DD).

### vi. Plaintiff's January 11, 2017 reprimand.

On October 26, 2016, plaintiff was involved in a forklift accident at work which damaged a CMOP wall. DSOF ¶¶50-51. In response, on November 16, 2016, the VA proposed a three-day suspension but gave plaintiff fourteen days to respond and request additional investigation. *Id.*; DSOF (Ex. N). Plaintiff did so, and Steinwandt further investigated the incident, by, among other things, consulting Kohutynski about what happened. Def. Resp. to PSOF, at 31. Using the VA's progressive discipline guidelines, Steinwandt deemed a suspension unnecessary and instead, on January 11, 2017, formally reprimanded plaintiff. PSOF ¶¶33-34; DSOF ¶¶53-54. Plaintiff was not reprimanded again during the remainder of his time at CMOP.

Another VA materials handlers named Michael Faragoi (who is white, over forty years old, and who never engaged in protected conduct) negligently caused a separate forklift incident in 2016 which caused greater damage than plaintiff's accident. DSOF ¶61; PSOF ¶33. Initially, Simon proposed Faragoi be suspended for five days because of the incident. DSOF (Ex. U); PSOF ¶33. However, as with plaintiff's situation, the VA downgraded Faragoi's punishment to a reprimand for negligent performance of duties following additional investigation and application of the VA's progressive discipline guidelines. PSOF ¶33.

### vii. Plaintiff suffered a workplace injury in May 2018 and was offered light duty in August 2020.

In May 2018, plaintiff injured his back in a workplace accident. DSOF ¶66. Although plaintiff did not contact the EEO to seek a reasonable accommodation or to complain about the lack thereof, Simon worked with the Workman's Compensation Office to provide him with different work assignments. *Id.* ¶67. Two years later, on August 5, 2020, plaintiff was offered a light duty assignment but turned it down. *Id.* ¶68 (Ex. Z). Plaintiff viewed such an accommodation as unreasonable. He believes that the VA's lack of action to accommodate him

9

following his injuries was meant to set him up for failure and eventual termination.  PSOF ¶37.

In any event, plaintiff retired from CMOP on August 27, 2020, three weeks after he was offered

the light duty assignment.  DSOF ¶3.

On July 20, 2020, plaintiff (who is now represented by counsel) brought his initial pro se

complaint against defendant.  (Dckt. #1).

## III.    DISCUSSION

In his four count Third Amended Complaint ("TAC"), plaintiff alleges: (1) discrimination

in violation of Title VII (Count One); (2) retaliation in violation of Title VII (Count Two); (3)

hostile work environment in violation of Title VII (Count Three); and (4) discrimination, hostile

work environment, and retaliation in violation of the ADEA (Count Four).[3]  (Dckt. #71 at 5-8).

Plaintiff's TAC includes certain claims that he advanced in his EEO complaint: namely, that the

VA (1) discriminated and retaliated against him when he was formally reprimanded in April

2016; (2) discriminated and retaliated against him when they revoked his Compressed Schedule

with knowledge that he used his free Fridays to care for his father-in-law and attend to union

work; and (3) subjected plaintiff to a hostile work environment exemplified by Casey's age-

related statement toward him.  (*Id*. ¶¶23-58).  In addition, plaintiff asserts other claims that he

did not expressly include in his EEO complaint: namely, that the VA discriminated against him

by denying him promotions and trainings from 2011 through 2015, and that it retaliated against

him by issuing him a reprimand in January 2017 following a forklift accident and by not

providing reasonable accommodations in August 2020 following a prior injury.  (Dckt. #114 at

13, 16).

---

[3] Although plaintiff purports to base his Title VII discrimination and hostile work environment claims on
allegations of both race *and* age discrimination, it is well-settled that "age discrimination . . . is not
covered by Title VII."  *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 465 n.4 (1982).

As will be shown below, plaintiff's claims fail for one or more of the following reasons: (1) they are time-barred; (2) they were not exhausted at the administrative level; and/or (3) plaintiff failed to present sufficient evidence to allow a reasonable jury to find he was subjected to discrimination based on race and age, a hostile work environment, and retaliation. As such, the Court grants summary judgment on each of plaintiff's claims.

**A. Plaintiff's claims that occurred more than forty-five days prior to his contact with his EEO counselor are time-barred.**

Plaintiff brings a number of claims alleging discrimination and retaliation in his performance ratings, lack of trainings received, and non-selection for jobs or promotions before 2016 which occurred more than forty-five days before he initially contacted his EEO counselor. Defendant argues that these claims are time-barred because plaintiff did not first pursue them administratively. (Dckt. #101 at 15-16). The Court agrees.

Federal employees who believe that they have been discriminated against on the basis of race, age, or other protected characteristics or activities must first exhaust their administrative remedies by obtaining EEO counseling or filing an informal EEO complaint within 45 days of the alleged discriminatory action prior to filing a civil action in federal court. *Formella v. Brennan*, 817 F.3d 503, 510 (7th Cir. 2016) (citing 29 C.F.R. §1614.105(a)(1)); 29 C.F.R. §1614.103(a). The agency against which the complaint is filed then investigates the matter and issues a report, after which the employee can request a hearing. Complaints may be amended with issues or claims like or related to those raised in the initial complaint at any time prior to the conclusion of the agency's investigation. 29 C.F.R. §1614.106(d), (e). The employee then has a right to a hearing on the agency's report before an administrative judge, as well as a right to appeal to the EEOC for review of that hearing before a civil action can be filed. 29 C.F.R.

§§1614.108(f), 1614.110(a).  These requirements apply to claims of discrimination and retaliation in violation of Title VII and the ADEA.  29 C.F.R. §1614.103(a).

Enforcing the forty-five day contact requirement "exists for good reason" in order to "give[] the government a chance to address issues and fix problems" quickly.  *Patel v. Brennan*, Case No. 20-cv-2238, 2021 WL 5937769, at *12 (N.D.Ill. Dec. 16, 2021) (citing *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008)).  Contacting the EEO office is not optional, and courts will "bar claims if the forty-five day requirement is not satisfied and there is no occasion for equitable tolling."  *Lapka*, 517 F.3d at 981 (citing *Rennie v. Garrett*, 896 F.2d 1057, 1061-62 (7th Cir. 1990)).

As explained above, plaintiff first contacted an EEO counselor on March 23, 2016, and he submitted an EEO complaint on June 25, 2016.  Plaintiff alleges that he suffered discrimination and retaliation regarding performance reviews and denial of trainings and advancement in the VA system from 2011 through 2015, with his last application for a promotion or other internal position occurring on August 28, 2015.  (Dckt. #71 ¶¶27, 35); DSOF (Ex. Q).  Far more than forty-five days passed between the last promotion denial and when plaintiff contacted an EEO counselor on March 23, 2016, and plaintiff failed to mention the pre-2016 events in his EEO complaint in any event.  DSOF (Ex. CC).  Accordingly, all of plaintiff's claims which are based on events prior to February 7, 2016 (forty-five days prior to his contact with the EEO counselor) are time-barred.  *See Bryant v. McDonough*, Case No. 21-cv-4461, 2023 WL 3074355, at *8 (N.D.Ill. Apr. 25, 2023); *Lapka*, 517 F.3d at 981.

### B.   Plaintiff was not required to exhaust his administrative remedies for the retaliation claims that accrued after he made his EEO complaint.

Plaintiff also alleges that the VA discriminated and retaliated against him based on his protected status or activities when it issued him a January 11, 2017 reprimand for the 2016

12

forklift accident and failed to provide him with a reasonable accommodations in August 2020 following his May 2018 workplace injury. (Dckt. #114 at 13-15). These alleged post-2016 acts of discrimination and retaliation occurred at least six and one-half months *after* plaintiff filed his EEO complaint. Nonetheless, plaintiff did not amend his EEO complaint to add these post-2016 claims or otherwise take action to exhaust them at the administrative level. Instead, he contends that the post-2016 claims did not need to be addressed at the EEOC level because: (1) they are "like or reasonably related to the claims litigated at the EEOC"; and (2) they are a continuation of the VA's discriminatory and retaliatory conduct while his EEO complaint was pending. (Dckt. #114 at 12-13). Defendant argues that these claims are barred for failure to exhaust. (Dckt. #101 at 16-19). The Court agrees, in part, with both parties.

As discussed above, federal employees asserting claims under Title VII and the ADEA must first exhaust their administrative remedies prior to bringing suit in the district court. *See Green v. Brennan*, 578 U.S. 547, 552-53 (2016); *Bohac v. West*, 85 F.3d 306, 309 (7th Cir. 1996). "The purpose of this [exhaustion] requirement is twofold: to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).

Claims that are not first exhausted at the administrative level may be included in a civil filing only if the issues are "like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations," which a reviewing court should view under a liberal standard.[4] *Id.*, quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 528 F.2d 164, 167 (7th Cir. 1976) (en banc); *see Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985); *see also*

---

[4] The Seventh Circuit has recognized that a federal employee need not fully exhaust ADEA claims with the EEOC *if* the employee gives the EEOC at least 30 days notice, within 180 days after the occurrence of the questioned incident, of the individual's intent to file an ADEA action. *Bohac*, 85 F.3d at 309. Plaintiff has presented no evidence that this limited exception to exhaustion is at issue here.

*McHale v. McDonough*, 41 F.4th 866, 870 (7th Cir. 2022). "[I]n order for claims to be deemed related, 'the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*'" *Teal*, 559 F.3d at 692, *quoting Cheek*, 31 F.3d at 501 (emphasis in original). Whether claims are within the scope of an EEOC charge is a question of law. *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011).

Here, plaintiff does not argue that he included his later claims in his original EEO complaint or by a later amendment. Instead, plaintiff asserts that he was not required to do so. (Dckt. #114 at 12). He contends that these claims comply with both prongs of the *Teal* test and argues "that CMOP continued to retaliate against him by issuing another reprimand, failing to promote him, and failing to properly accommodate his workplace injury," and that requiring plaintiff to either amend or re-file his complaint would unduly burden him by creating an "endless loop" of filings. (*Id*. at 12-13).

The Court agrees with plaintiff with regard to the retaliation claims that he brings based on the post-2016 incidents. The Seventh Circuit has squarely "held for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc., that a plaintiff who alleges retaliation for having filed a charge with the EEOC need *not* file a second EEOC charge to sue for that retaliation." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) (emphasis added) (citing cases). The Seventh Circuit adopted the above rule "in part by concluding that such retaliation complaints have a reasonable relationship to the initial EEOC charge." *Diggs v. Lowe's Home Centers, LLC*, No. 21 C 4544, 2022 WL 17477619, at *3 (N.D.Ill. Dec. 6, 2022) (citing cases); *Vargas v. Price*, No. 17-CV-6481, 2021 WL 698500, at *14 (N.D.Ill. Feb. 23, 2021) (same). Thus, plaintiff may proceed with his

retaliation claims based on the post-2016 incidents even though he did not exhaust his administrative remedies with respect to those claims.

On the other hand, plaintiff's failure to exhaust his administrative remedies dooms his ability to proceed with any substantive discrimination claims based on the post-2016 incidents. As the Seventh Circuit has held, where – as here – the conduct underlying a plaintiff's substantive discrimination claims has not yet occurred at the time he filed his EEOC charge, "'[t]here was no way for the EEOC to undertake preliminary investigation as contemplated by Title VII's statutory design.'" *Moore*, 641 F.3d at 258, *quoting Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2011); *Tyburski v. City of Chicago*, 964 F.3d 590, 601 (7th Cir. 2020). Consequently, any substantive claims stemming from the post-2016 incidents are not "like or reasonably related" to the claims outlined in plaintiff's EEOC charge and plaintiff cannot proceed with such claims because he failed to exhaust them. *Tyburski*, 964 F.3d at 601; *Moore*, 641 F.3d at 257-58; *Conner*, 413 F.3d at 680.

C.     **Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether he has shown that defendant discriminated against him on the basis of his race when it revoked his Compressed Schedule and reprimanded him in 2016.**

Plaintiff has timely raised and properly exhausted his Title VII race discrimination claims concerning defendant's decision to change his Compressed Schedule on March 21, 2016 and defendant's decision to issue him a reprimand on April 7, 2016. Plaintiff may proceed under the direct and indirect methods of proof to establish his race (and age) discrimination claims. *See, e.g., Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). The ultimate question is whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Abrego*, 907 F.3d at 1012, *quoting Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Under the direct method, the focus is on "whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Atanus*, 520 F.3d at 671. Proof under the direct method "'is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion . . . but also includes circumstantial evidence which suggests discrimination through a longer chain of inferences.'" *Id.* at 672, *quoting Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1053 (7th Cir. 2006). "[C]ircumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; [and] (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment. . . ." *Id.* at 572 (internal quotation marks omitted). Plaintiff, who admits that no one mentioned his race (or age) in connection with the 2016 reprimand and the change to his Compressed Schedule (DSOF ¶¶30, 40), has not presented any such circumstantial evidence here.

Instead, plaintiff appears to rely on the indirect method of proof, (*see* Dckt. #114 at 13–18), under which he can create a presumption of discrimination by establishing a prima facie case through the following showing:

> (1) [he] belongs to a protected class; (2) [he] performed [his] job according to [the VA]'s legitimate expectations; (3) [he] suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by [the VA].

*Atanus*, 520 F.3d at 672-73 (noting that summary judgment is appropriate if plaintiff fails to establish any of the elements of the prima facie case). This presumption shifts the burden to the VA to produce a legitimate, non-discriminatory reason for its action. *Id.* If the VA satisfies its burden of production by rebutting plaintiff's prima facie case, then the burden shifts back to plaintiff to show that the VA's reasons are false and only a pretext for discrimination. *Id.*

Plaintiff's effort to establish a race discrimination claim under the indirect method of proof fails for three reasons: (1) the VA's decisions to change his Compressed Schedule and to issue him a reprimand in 2016 are not adverse employment actions; (2) plaintiff failed to identify any similarly situated non-African-Americans who were treated more favorably than him; and (3) plaintiff lacks sufficient evidence to show that the legitimate, non-discriminatory reasons that the VA asserted for taking changing his schedule and issuing him a reprimand are a pretext for discrimination.

### 1. The VA's Change to Plaintiff's Compressed Schedule and Issuance of a Reprimand in 2016 Are Not Adverse Employment Actions.

The parties dispute whether the VA's decision to change plaintiff's Compressed Schedule on March 21, 2016 was an adverse employment action. As a general matter, a change to plaintiff's working hours without a change to pay, job title, or job responsibilities does not rise to the level of an adverse employment action. *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001); *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012); *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 663 (7th Cir. 2011). Nonetheless, a change in work schedule can constitute an adverse action if an employer "set out to exploit a known vulnerability and did so in a way to cause a significant (and hence an actionable) loss." *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662-63 (7th Cir. 2005) (holding that a change in work hours could be materially adverse where defendant's manager knew that plaintiff worked her prior schedule to care for her son with Down's Syndrome and the schedule change caused plaintiff to suffer a significant and actionable loss because it had the practical effect of requiring her to use two hours of leave a day thereby cutting her wages by twenty-five percent); *Porter*, 700 F.3d at 955.

In this case, in contrast to *Washington*, plaintiff has presented no evidence that the VA's decision to change his Compressed Schedule caused him to suffer a significant and actionable

loss (i.e., a loss of pay). Without such evidence of an economic loss, the revocation of plaintiff's Compressed Schedule was not an adverse employment action for purposes of Title VII. *See, e.g.*, *Porter*, 700 F.3d at 955 (distinguishing *Washington* and holding that a schedule change did not cause an adverse employment action where plaintiff cited "no evidence" in support of her assertion that the change caused her to suffer an economic loss); *cf. Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006) (finding a materially adverse change in terms and conditions of employment where plaintiff suffered an effective reduction in her hourly wage because she was required to work twenty-five percent more time to earn the same income as before). The fact that a VA human resources representative testified that revoking the Compressed Schedule was "a change in the conditions of employment," (Dckt. #114 at 8), does not alter this conclusion because *every* change in the conditions of employment is *not* an adverse employment action.[5]

Furthermore, plaintiff has presented no evidence that Steinwandt (who became Director in 2015 after plaintiff began working the Compressed Schedule in 2014) initiated the evaluation of the facility's operational needs that culminated in the change to plaintiff's Compressed Schedule in order to target a "known vulnerability" of plaintiff's. *Cf. Washington*, 420 F.3d at 663 ("A jury could find that the Department set out to exploit a known vulnerability and did so in a way to cause significant (and hence an actionable) loss."). At worst, the VA changed plaintiff's Compressed Schedule in spite of – and not because of – any arguable hardship the

---

[5] *See Washington*, 420 F.3d at 660-61 ("the Supreme Court has held that, although any 'tangible employment action' – lower pay or another 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision cause a significant change in benefits,' *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 . . . (1998) – may be treated as 'discrimination,' only a 'severe or pervasive' change in the daily 'conditions' of employment may be treated as discriminatory.").

change imposed on plaintiff for the facially legitimate reason of furthering the operational needs of the CMOP.[6]

The parties also dispute whether the reprimand that plaintiff received in April 2016 constituted an adverse employment action. The Seventh Circuit has held that "written reprimands without any changes in the terms or conditions of [a plaintiff's] employment are not adverse employment actions." *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *Porter*, 700 F.3d at 955; *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001). Even so, the Seventh Circuit has further held that:

> [W]e can conceive of reprimands that carry with them immediate, albeit non-economic, consequences that in and of themselves go so far as to materially alter the terms and conditions of employment. For example, if a written warning also led to ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities, perhaps then we would find an action that is adverse.

*Whittaker v N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (internal quotation marks omitted).

It is undisputed that plaintiff's reprimand did not subject him to loss of wages or any other immediate economic consequence. Nonetheless, plaintiff asserts in his statement of additional material facts that the reprimand for conduct unbecoming a federal employee would materially impact his job opportunities and promotions at the VA. PSOF ¶17. However,

---

[6] Plaintiff cites to the decision in *Wink v. Miller Compressing Co.*, No. 14-CV-367, 2015 WL 3454220 (E.D.Wis. June 1, 2015), for the proposition that summary judgment should be denied where there was an issue of fact "as to whether employer took a materially adverse action when it changed an employee's schedule from hybrid to full-time in office when employee depended on the hybrid schedule to care for her autistic son." (Dckt. #114 at 14). However, *Wink* is distinguishable because that case was construing the meaning of "materially adverse action" for purposes of plaintiff's retaliation claim under the Family Medical Leave Act and not under Title VII and – as stated above – there is no evidence that the VA changed plaintiff's Compressed Schedule to "exploit" his "known vulnerability." *See Wink*, 2015 WL 3454220, at *7 ("A schedule change may constitute a materially adverse action when there is evidence that the defendant sought to exploit a 'known vulnerability' by altering a plaintiff's work schedule upon return from FMLA leave.").

plaintiff's assertion is not based on any VA personnel policy or admission by a VA official and

the reprimand itself (which would remain in his file for three years) states that it may be used

only "in determining an appropriate penalty if further infractions occur." (Dckt. #102-2 at 307).

Instead, plaintiff relies on his own speculative deposition testimony. (*See* Dckt. #102-2 at 25 ("If

you're ever charged with [conduct] unbecoming a federal employee, there is no way you will be

able to get positions or opportunities or upward mobility or what have you.")). It is well-settled,

however, that plaintiff cannot rely on his own speculation or conjecture to defeat summary

judgment. *See, e.g.*, *Igaski v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 n.5 (7th Cir.

2021); *Winsley v. Cook County*, 563 F.3d 598, 605 (7th Cir. 2009).[7] As such, plaintiff has failed

to present sufficient evidence to allow a reasonable jury to find that the 2016 reprimand

constitutes an adverse employment action.

### 2. Plaintiff Has Failed To Offer Sufficient Evidence That A Similarly Situated Non-African-American Employee Was Treated More Favorably Than Him.

Plaintiff asserts that he was treated differently and less favorably than a non-African

American employee (Cassidy Casey) who made a derogatory comment about his age and other

non-African American employees who worked alternative work schedules. (Dckt. #114 at 18;

PSOF ¶21). To establish that these employees were similarly situated to him, plaintiff "must

show that members of the comparative group are directly comparable to [him] in all material

respects." *Atanus*, 520 F.3d at 673 (internal quotation marks omitted); *Abrego v. Wilkie*, 907

F.3d 1004, 1013 (7th Cir. 2018) (to show that a coworker is similarly situated to a plaintiff who

---

[7] Plaintiff also asserts – correctly – that his 2016 reprimand was mentioned in the documentation regarding the proposed (but never implemented) suspension on account of his 2016 accident. (Dckt. #102-3 at 4-5). However, it is not enough to show that a reprimand might bring plaintiff one step further along in a progressive disciplinary process that might eventually lead to termination because termination is not the inevitable consequence of every reprimand. *See Whittaker*, 424 F.3d at 648.

has been disciplined, plaintiff must proffer evidence that the other employee had a "comparable set of failings") (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)).

Plaintiff has failed to offer sufficient evidence to allow a reasonable jury to find that the coworkers to whom he wishes to compare himself are similarly situated to him.  As discussed above, the VA reprimanded plaintiff in April 2016 for conduct unbecoming a federal employee based on its finding that he had conversations with two other VA employees which left them feeling threatened, intimidated, and with the impression that he was trying to deter them from appearing at an MSPB hearing.  Plaintiff concedes that he does not know of any other employee who was accused of intimidating coworkers who was treated differently than him.  DSOF ¶31. Casey, on the other hand, was verbally admonished by his supervisor (Simon) for making a derogatory comment that referred to plaintiff's age.  Although a written reprimand is presumably more serious than a verbal admonishment, no reasonable jury could find that Casey's one-off comment referencing plaintiff's age was sufficiently comparable to plaintiff's threatening statements during his conversations with his two co-workers so as to constitute the "same shortcoming." *Abrego*, 907 F.3d at 1013-14; *Brooks v. Avancez*, 39 F.4th 424, 437 (7th Cir. 2022) ("Rude and disrespectful behavior . . . is not at all the same as making threats.").

Plaintiff has likewise failed to present sufficient evidence to allow a reasonable jury to find that the other VA employees whose work schedules were not changed were similarly situated to him.  To begin, it is undisputed that plaintiff was the only material handler and logistics employee with a Compressed Schedule.  The other employees worked "alternative work schedules" that were different from plaintiff's and plaintiff has presented no evidence that the VA considered their schedules to be disruptive of the CMOP's operational needs.

**3. Plaintiff Has Failed To Offer Sufficient Evidence To Show that the VA's Legitimate, Non-Discriminatory Reasons for Changing His Compressed Schedule and Issuing Him the 2016 Reprimand Were Pretextual.**

Even presuming that plaintiff had produced sufficient evidence to create a genuine issue of material fact as to whether he has established the elements of his prima facie case (and he has not done so for the reasons stated above), the VA has articulated legitimate, non-discriminatory reasons for changing plaintiff's Compressed Schedule and issuing him the 2016 reprimand. *Supra*, at Sections II(A)(ii) and II(A)(iii).

Plaintiff now has the burden of producing sufficient evidence to raise a genuine issue of fact as to whether the VA's articulated reasons are a pretext and that the true reasons for its actions were "based on prohibited discriminatory animus." *Benuzzi*, 647 F.3d at 663. He "may show pretext with evidence that the employer's explanation is not credible" by presenting facts establishing "that the employer's reason had no basis in fact, that the explanation was not the real reason for its action, or that the reason stated was insufficient to warrant the adverse job action." *Atanus*, 520 F.3d at 674 (internal quotation marks and citation omitted). The "main inquiry in determining pretext is whether the employer honestly acted on the stated reason rather than whether the reason for the [adverse employment action] was a correct business judgment." *Id.* (internal quotation marks omitted). Thus, if the VA "honestly believed its reasons for taking the challenged actions, even if those reasons were incorrect, then the reasons were not pretextual." *Brooks*, 39 F.4th at 435 (internal quotation marks omitted). Furthermore, plaintiff "must do more than simply allege that an employer's stated reasons are inaccurate; he must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Benuzzi*, 647 F.3d at 663 (internal quotation marks omitted).

22

Plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact as to whether the VA's reasons for its actions are pretextual. In particular, plaintiff asserts that the VA's decision to change his Compressed Schedule was pretextual because: (1) he was justified in accepting a Compressed Schedule due to the hardship created by his need to care for his father-in-law; (2) neither Steinwandt nor Simon could identify a specific event that occurred prior to the Spring of 2016 that required terminating his Compressed Schedule; (3) CMOP hired another material handler; and (4) he was justified in working more hours on Mondays rather than Fridays because Fridays were slow and Mondays were busy in his experience; and (5) other departments, in his view, appeared understaffed. (Dckt. #114 at 16).

However, the VA presented evidence that: (1) Steinwandt asked Simon to evaluate the facility's operational needs, including the impact of the Compressed Schedule used by plaintiff (who was the only material handler to have one), after he became CMOP director in 2016; (2) both Steinwandt and Simon believed that plaintiff's absence on Fridays left the CMOP short-staffed and would continue to leave plaintiff's unit short-staffed even after the VA hired an additional materials handler because there would be a four-hour gap in coverage if plaintiff continued working a Compressed Schedule; and (3) plaintiff's need for a Compressed Schedule to care for his family member and attend to his union duties did not trump the CMOP's operational needs and plaintiff's Compressed Schedule could be revoked to accommodate the facility's needs. DSOF ¶¶34-39.

Plaintiff's only response to the VA's stated rationale is to disagree with the volume of work on Fridays and Mondays and the VA's conclusion that his use of the Compressed Schedule

was inconsistent with the CMOP's operational needs.  (Dckt. #114 at 16; PSOF at 25-28).[8]  This is insufficient to show pretext because even if plaintiff is correct about these matters and Steinwandt and Simon made a mistaken business judgment, he has not shown that they did not honestly believe that plaintiff's use of a Compressed Schedule had an adverse impact on the CMOP's operational needs.  *See Brooks*, 39 F.4th at 436 (arguing about the accuracy of an employer's assessment is a distraction because the issue is not whether the employer is right but whether its description of its reasons is honest).  Consequently, plaintiff has failed to raise a material issue of fact regarding whether the VA's rationale for its decision to revoke his Compressed Schedule is pretextual.  *See, e.g., Id.*; *Atanus*, 520 F.3d at 674 (citing cases).

Plaintiff's effort to show that the VA's rationale for its spring 2016 factfinding investigation and decision to reprimand him was pretextual is similarly flawed.  As outlined more thoroughly above (*supra*, at Section II(A)(ii)), this factfinding investigation arose from the reports by two of plaintiff's coworkers that plaintiff threatened and intimidated them in an attempt to deter them from testifying in front of an MSPB panel.  Steinwandt initiated the factfinding, conducted interviews, and proposed a suspension.  Plaintiff responded, and Kohutynski[9] took over additional factfinding and issued a formal reprimand with a written

---

[8] Notably, plaintiff offers no evidence to dispute the VA's officials' testimony that the CMOP would have had a four-hour gap in coverage on Fridays even after the VA hired a new material handler.  (PSOF at 27-28).

[9] Plaintiff contends that that the Court should strike Kohutynski's declaration or, at a minimum, not rely on evidence arising from it, because the declaration was not produced during discovery.  (Dckt. #114 at 20).  Plaintiff's argument is without merit.  As the VA points out, it had no obligation to disclose Khutynski's declaration during discovery because the declaration was completed on August 4, 2022 in connection with defendant's motion for summary judgment months *after* discovery closed in mid-April, 2022. (Dckt. #90); *Sullivan v. Conway*, No. 93 C 4947, 1995 WL 573421, at *4 (N.D.Ill. Sept. 27, 1995) ("Federal Rule 34 contemplates production of documents already in existence and does not require a party to create or prepare a document.").  Furthermore, plaintiff does not claim that the twelve exhibits attached to the declaration were not produced during discovery and it is apparent (from the Bates-stamp markings) that they were.  Nor does plaintiff claim that he was precluded from deposing Kohutynski during discovery.  For these reasons, there is no basis to exclude Kohutynski's declaration from consideration.

statement of her rationale. Although plaintiff vehemently disagrees with his two colleagues'
description of their conversations with him, he provides no evidence to even suggest that the VA
did not honestly believe *their* account (as opposed to *his* account) of what occurred during the
conversations. Without such evidence, plaintiff has failed to raise a material issue of fact
regarding whether the VA's rationale for its decision to issue him a reprimand in 2016 is
pretextual. *See, e.g.*, *Atanus*, 520 F.3d at 674 (citing cases).

For all of these reasons, the VA is entitled to summary judgment on plaintiff's race
discrimination claims.

**D.  Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as
to whether he has shown that defendant discriminated against him on the basis of
his age when it changed his Compressed Schedule and reprimanded him in 2016.**

Plaintiff's claim that the VA violated the ADEA when it changed his Compressed
Schedule and reprimanded him in 2016 because of his age "fails for the same reasons his Title
VII claims failed: no prima facie case under *McDonnell Douglas* and no holistic evidence under
*Ortiz*." *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 960 (7th Cir. 2021). Plaintiff
concedes that no one mentioned his age as a reason for changing his Compressed Schedule or
issuing him the 2016 reprimand. DSOF ¶¶29, 40. Furthermore, as explained above in Section
C: (1) the VA's decisions to change his Compressed Schedule and to issue him a reprimand in
2016 are not adverse employment actions; (2) plaintiff has failed to identify any similarly
situated employees (let alone, any similarly situated employees who are substantially younger
than him) who were treated more favorably than him; and (3) plaintiff lacks sufficient evidence
to show that the legitimate, non-discriminatory reasons that the VA asserted for changing his
schedule and issuing him a reprimand are a pretext for discrimination.

Consequently, the VA is entitled to summary judgment on plaintiff's age discrimination
claims.

**E.** **Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether he was subjected to a hostile work environment based on his age.**

Plaintiff argues that he worked in a hostile work environment "due to his age for several years and that his co-workers constantly made snide comments to him," culminating in Casey's April 18, 2016 statement to him that: "You are [fifty-nine] years old and should know better." (Dckt. #114 at 18-19).

This Court presumes (as does the Seventh Circuit) that a hostile work environment claim is actionable under the ADEA. *See Tyburski*, 964 F.3d at 600. To prevail on his hostile work environment claim, plaintiff must show: "(1) []he was subject to unwelcome harassment; (2) the harassment was based on h[is] [age]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of h[is] employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Id.*, at 601 (internal quotation marks omitted). "A hostile work environment is one that is both objectively and subjectively offensive." *Id.* (internal quotation marks omitted). "In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." *Id.* at 601-602 (internal quotations marks omitted); *Brooks*, 39 F.4th at 441.

The showing a plaintiff must make to establish employer liability varies depending upon whether the harassment was perpetrated by a supervisor with the requisite authority over the plaintiff or by one or more co-workers. *Tyburski*, 964 F.3d at 602. Where – as here – plaintiff alleges that only co-workers were involved in creating the hostile environment, "'the employer is liable only if it was negligent in controlling working conditions.'" *Id.*, quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "An employer's legal duty in co-employee harassment

26

cases will be discharged if it takes reasonable steps to discover and rectify acts of [age-based] harassment of its employees." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022) (internal quotation marks omitted); *Chism v. Kenall Mfg. Co.*, No. 06 C 3374, 2008 WL 506115, at *14 (N.D.Ill. Feb. 15, 2008) ("even if the environment is hostile, an employer will be liable . . . only if the harasser is a co-worker and the employer has notice of the harassment but fails to act reasonably to stop it."). A plaintiff's failure to present evidence establishing employer liability is an independent basis for his hostile environment claim to fail. *Tyburski*, 964 F.3d at 602.

In this case, plaintiff asserts that he was subjected to a hostile environment due to his age based on the following evidence: (1) there was yelling and screaming between different employees and such hostility was sporadically directed towards him; (2) two of his co-workers (Cassidy Casey and Lupe Carrasco) made "snide remarks" – which plaintiff understood as references to his age – about him being slow and not knowing what he was doing an unspecified number of times since 2014; (3) Casey told him that: "you are 59 years old and should know better" on April 18, 2016; and (4) after plaintiff complained to his supervisor (Simon) about Casey's remark, plaintiff heard from a co-worker that his co-workers continued to make the same comments behind his back. (Dckt. #114 at 18-19; PSOF ¶24 (citing to Dckt. #102-2 at 38-42)).

The above evidence, even when considered as a whole, fails to provide a sufficient basis from which a reasonable jury could find the existence of an objectively hostile work environment based on plaintiff's age.[10] To begin, evidence of a general atmosphere of hostility within a

---

[10] The Court finds for purposes of summary judgment that the work environment was subjectively hostile to plaintiff notwithstanding the somewhat equivocal testimony from his deposition. In particular, while plaintiff testified that snide remarks left him feeling disrespected and depressed, (Dckt. #114 at 19), he also testified that he would "ignore" the remarks because he "had a lot of backbone" and "thick skin" and

workplace that is not tied to a protected status and is only sporadically directed towards a plaintiff does not support an actionable hostile work environment. *See, e.g.*, *Abrego*, 907 F.3d at 1015 (granting summary judgment even where supervisors were "short tempered," "hostile," unfairly critical, and disrespectful); *Porter*, 700 F.3d at 956 (allegations of being "harassed" and "intimidated" by "sporadic inappropriate and rude comments by supervisors" do not rise to the level of conduct that alters the terms and conditions of employment); *Jones v. Cir. Ct. of Cook Cnty.*, No. 18-CV-01319, 2023 WL 5017937, at *5 (N.D.Ill. Aug. 7, 2023) (evidence that supervisor treated African American probation officers in an irritated and frustrated manner by berating and yelling at them was not enough to alter the terms and conditions of their employment) (citing *Abrego*).

Furthermore, the snide remarks by plaintiff's co-workers to the effect that he was slow and did not know what he was doing – even if interpreted as referring to plaintiff's age – are neither sufficiently severe nor frequent to constitute a hostile work environment. *See Brooks*, 39 F.4th at 441–42. In *Brooks*, for example, plaintiff's team lead and two other co-workers "regularly" told her that "she was old and slow" in a manner which – unlike here – expressly linked plaintiff's age to their snide comments about the slow pace of her work. *Id.* The Seventh Circuit held "[t]he insults Brooks received may be juvenile, insulting, and boorish, but no reasonable jury could find that they were so frequent or pervasive as to create a hostile work environment." *Id.* at 442.[11]

---

that "[w]ords don't bother me." (Dckt. #102-2 at 39). Nonetheless, the Court – as it must – views plaintiff's testimony in the light most favorable to him.

[11] The alleged snide comments that continued outside of plaintiff's presence are even less severe than such comments that were made to his face. *See Thompson v. Memorial Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010); *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005).

Moreover, adding Casey's one-time age-based statement into the mix does not change the calculus. As the Seventh Circuit has held, "[e]ven insults specifically referencing age do not necessarily rise to the level of actionable harassment." *Tyburski*, 964 F.3d at 600. This is particularly so where – as here – there was only one such age-related comment that was made by a co-worker (and not a supervisor). *See Rogers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (holding that a supervisor's use of a racial epithet "impacts the work environment far more severely than use by co-equals"); *Raciot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 676–78 (7th Cir. 2005) (supervisor's single comment that if plaintiff "were younger, [she] could pick up the boxes" is insufficient to establish a hostile environment claim); *Hamzah v. Woodman's Food Mkt., Inc.*, 693 Fed.Appx. 455, 458 (7th Cir. 2017) (holding that a single comment that plaintiff was "too old to work on parcel and carts" was not severe enough to create an objectively hostile work environment); *Cover v. OSF Healthcare Sys.*, No. 3:18-cv-50114, 2023 WL 6541319, at *6 (N.D.Ill. Oct. 6, 2023) (supervisor's reference to plaintiff as "old man" was not alone sufficient for actionable harassment).[12]

---

[12] Several courts have considered the severity and impact of statements, such as Casey's, to the effect that a plaintiff should know better because of his age. Some find that such statements even when made by a supervisor "are not necessarily discriminatory and speak more to Plaintiff's maturity than to any age bias." *See, e.g.*, *Lindsey v. Walgreen Co.*, No. 08 C 3547, 2009 WL 4730953, at *5 (N.D.Ill. Dec. 9, 2009), *aff'd*, 615 F.3d 873 (7th Cir. 2010); *Paraka v. Univ. of Rochester*, 136 F.Supp.3d 481, 485 (W.D.N.Y. 2015); *Gutierrez-Lines v. Puerto Rico Elec. & Power Auth.*, 751 F.Supp.2d 327, 342-43 (D.P.R. 2010) (such comments by a supervisor are "mere offensive utterances"); *Gilbert v. McDonald's Corp.*, No. 605CV16979RL22DAB, 2007 WL 9719124, at *3 (M.D.Fla. Feb. 27, 2007) (such comments by supervisors, even if "mean spirited in their nature," do not rise to the level of direct evidence or proof of motivation to fire plaintiff). On the other hand, other courts have found that such comments can constitute direct evidence of discrimination when they are made by a supervisor in conjunction with the disputed employment decision because they could be interpreted as holding an older plaintiff to a higher standard than younger co-workers. *Straughan v. Vibra Rehab. Hosp. of El Paso, LLC*, No. EP-19-CV-241-KC, 2020 WL 10758973, at *10-11 (W.D.Tex. Nov. 29, 2020) (citing to *Bowman v. Am. Drug Stores*, No. 00 C 7452, 2001 WL 1029388, at *3 (N.D.Ill. Sept. 6, 2001)).

In this case, given the nature of the comment and the fact that Casey is a co-worker, the Court finds that his statement is the type of age-related insult that does not – standing alone – rise to the level of actionable harassment. *See, e.g.*, *Tyburski*, 964 F.3d at 600.

Plaintiff's hostile work environment claim fails for the additional reason that he has not offered evidence establishing a basis for employer liability. This is so because it is undisputed that Casey (and Carrasco) stopped making offensive comments to plaintiff after plaintiff complained to Simon about Casey's April 18, 2016 remark and Simon confronted Casey and told him not to talk plaintiff in that manner. Moreover, plaintiff concedes that such comments ceased and he never again complained to the VA about any further harassment. This was prompt and effective remedial action by the VA. *See, e.g.*, *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813, 815 (7th Cir. 2022); *Tyburski*, 964 F.3d at 602.

Consequently, the VA is entitled to summary judgment on plaintiff's ADEA claim that he was subjected to a hostile environment based on his age.[13]

## F. Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether he was retaliated against in violation of Title VII and the ADEA.

Finally, plaintiff asserts that the VA retaliated against him in violation of Title VII and the ADEA by changing his Compressed Schedule effective March 21, 2016 and issuing reprimands to him on April 7, 2016 and January 11, 2017. Dckt. #114 at 13-17.

As with his substantive discrimination claims, plaintiff can establish his retaliation claims by either the direct or the indirect methods of proof. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018); *Benuzzi*, 647 F.3d at 664. Under the direct method, plaintiff must produce evidence from which a reasonable jury could conclude that: (1) he engaged in a statutorily protected activity;

---

[13] In his third amended complaint (Dckt. #71), plaintiff also alleges that he was subjected to a hostile environment based on his race. Defendant has sought summary judgment on all of plaintiff's claims yet plaintiff did not mention his race-based hostile environment claim in his response, let alone argue that summary judgment should not be granted as to it. Accordingly, the Court finds that plaintiff has abandoned his race-based hostile environment claim. *See, e.g., Kovaco v. Rockbestos-Surprenant Cable Co.*, 834 F.3d 128, 142-44 (2d Cir. 2016); *Robertson v. Dep't of Health Servs.*, 949 F.3d 371 374 & n.2 (7th Cir. 2020).

(2) he suffered a materially adverse action by the VA; and (3) there was a causal link between the two. *Id.* As the Seventh Circuit has recognized:

> causation can be established by circumstantial evidence, which includes, for example, suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently. This list is not exclusive; the plaintiff can point to any other evidence from which an inference of discriminatory intent might be drawn.

*Abrego*, 907 F.3d at 1015 (internal quotations and citations omitted).

Under the indirect method, plaintiff must present sufficient evidence to show that: (1) he engaged in statutorily protected activity; (2) he performed his job according to the VA's legitimate expectations; (3) despite meeting the VA's legitimate expectations, he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Atanus*, 520 F.3d at 677. The failure to satisfy any element of this prima facie case is fatal but if plaintiff does establish a prima facie case, the burden shifts to the VA to offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden then shifts back to plaintiff to show that the VA's reason is pretextual. *Id.*

Plaintiff's retaliation claims concerning the change to his Compressed Schedule and the two reprimands fail for the multiple reasons discussed below.

### 1. Plaintiff Cannot Base His Retaliation Claims On His Protected Conduct in Assisting Other Employees in Filing EEOC Complaints and Meeting With Then-Congressperson Duckworth Regarding Alleged Discriminatory Employment Practices Because His Supervisors Were Unaware of These Activities.

Plaintiff asserts that he engaged in protected conduct by assisting other VA employees in filing EEOC complaints and contacting then-Congressperson Duckworth regarding alleged discriminatory employment practices at the VA. (Dckt. #114 at 14-15). It is well-settled that "[f]or a super[visor] to have retaliated against an employee based on protected activities, the

super[visor] must have had knowledge of that protected activity." *Tyburski*, 964 F.3d at 603;

*Trahanas v. Northwestern University*, 64 F.4th 842, 857 (7th Cir. 2023); *Stephens v. Erickson*,

569 F.3d 779, 788 (7th Cir. 2009).  Here, presuming that the above actions were protected

conduct under Title VII and the ADEA, plaintiff has no evidence that his supervisors

(Steinwandt, Simon, and Kohutynski) had any knowledge of the conduct at the time they

engaged in the alleged retaliatory actions.  (*See* Dckt. #102-2 at 30); DSOF ¶¶44-45; PSOF at

29.[14]  Without knowledge of these acts of plaintiff's protected conduct, plaintiff's supervisors

could not have retaliated against him because of these actions.  *Trahanas*, 64 F.4th at 857;

*Tyburski*, 964 F.3d at 603; *Stephens*, 569 F.3d at 788.

### 2.  Plaintiff's Retaliation Claim Related to the Revocation of His Compressed Schedule Fails for Multiple Reasons.

Plaintiff's retaliation claim related to the revocation of his Compressed Schedule fails for

several reasons.  To recap, Simon notified plaintiff on February 28, 2016 that his Compressed

Schedule would be terminated as of March 21, 2016, for operational reasons.  DSOF ¶37.

Plaintiff did not contact the EEO counselor with his complaints of discrimination until March 23,

2016.  Consequently, as a matter of logic, the VA's decision to terminate plaintiff's Compressed

Schedule could not have been caused by an event (namely, plaintiff's contact with the EEO

counselor) which had not yet occurred.  Furthermore, for the reasons explained above, the

change to plaintiff's work schedule does not constitute an adverse employment action; plaintiff –

who was the only materials handler to have a Compressed Schedule – has not identified any

employees who were similarly situated to him (let alone any such employees who were treated

---

[14] Indeed, Congressperson Duckworth first informed the VA that she had met with several unidentified employees from CMOP regarding their concerns of discriminatory treatment on April 12, 2016, which was five days after plaintiff received the April 7, 2016 reprimand and three weeks after plaintiff's Compressed Schedule was revoked.  PSOF ¶11.

more favorably than he was); and plaintiff has failed to offer evidence sufficient to raise a genuine issue of fact as to whether the VA's stated reason for changing his schedule was pretextual.

### 3. Plaintiff's Retaliation Claim Related to the April 7, 2016 Reprimand Fails for Multiple Reasons.

Plaintiff's retaliation claim related to his April 7, 2016 reprimand likewise fails for multiple reasons. To begin, the investigation which led to this reprimand began in February 2016 and the VA notified plaintiff of his proposed reprimand for conduct unbecoming a federal employee on March 18, 2016. *Supra*, at Section II(A)(ii). Plaintiff did not engage in protected conduct that his supervisors knew of until five days later when he contacted the EEO counselor on March 23, 2016. Thus, the protected conduct did not cause the investigation and proposal to reprimand plaintiff. Furthermore, for the reasons explained above, the April 7, 2016 reprimand does not constitute an adverse employment action; plaintiff has not identified any employees who were similarly situated to him and treated more favorably; and plaintiff has failed to offer evidence sufficient to raise a genuine issue of fact as to whether the VA's stated reason for issuing him the April 7 reprimand was pretextual.

### 4. Plaintiff's Retaliation Claim Related to the January 11, 2017 Reprimand Fails Because Plaintiff Has Failed to Present Sufficient Evidence to Raise An Inference That There Was A Causal Connection Between the Reprimand And His Protected Conduct.

Plaintiff's retaliation claim related to his January 11, 2017 reprimand fails because he has failed to present sufficient evidence to raise an inference that there was a causal connection between his protected conduct, which occurred when he contacted the EEO counsel (March 23, 2016) and filed his EEO complaint (on June 25, 2016), and the reprimand he received almost ten months later in January 2017. As the Seventh Circuit has noted, "[c]ausality is typically one of

33

the highest hurdles retaliation plaintiffs must clear" and it has found that evidence of time periods between the protected conduct and the alleged retaliatory action far shorter than the seven months at issue here militates against an inference of causation based solely on suspicious timing. *See, e.g.*, *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (finding that periods of five weeks and two months between alleged retaliatory actions and protected activities "militate against" inference of causation based solely on suspicious timing); *Benuzzi*, 647 F.3d at 666 (two month time period separating protected conduct and suspension was insufficient to give rise to an inference of causation); *Igasaki*, 988 F.3d at 959-60 (same).

Furthermore, the record contains no other circumstantial evidence from which an inference of causation can be drawn. The VA has asserted a legitimate, non-discriminatory reason for why it reprimanded plaintiff (namely, because he was involved in a forklift accident at work which damaged a CMOP wall) and plaintiff has not attempted to show that the VA's reason was a pretext for illegal retaliation. (Dckt. #114 at 16). Instead, plaintiff attempts to argue that he was treated differently than another VA materials handler (Michael Faragoi) who did not engage in protected conduct and who was involved in a forklift accident that caused significantly more damage to the VA's property than plaintiff caused. *Id.* However, both plaintiff and Faragoi were treated the *same* by the VA: each received a written reprimand after their supervisors first proposed suspensions. Evidence showing that plaintiff was treated the same as a similarly situated co-worker who did not engage in protective conduct is not circumstantial evidence of causation. *Cf. Abrego*, 907 F.3d at 1015 (circumstantial evidence of causation includes "evidence that similarly situated employees were treated *differently*.") (emphasis added).[15]

---

[15] Although plaintiff asserts that the VA also retaliated against him by failing to properly accommodate his workplace injury in August 2020 (Dckt. #114 at 13), he has abandoned/waived this claim by failing to

Finally, even if plaintiff had presented sufficient evidence to raise an inference of causation, he has not shown – for the reasons stated above in Section III(C)(1) with reference to the 2016 reprimand – that the 2017 reprimand was an adverse employment action sufficient to support a retaliation claim.

For all these reasons, the VA is entitled to summary judgment on plaintiff's Title VII and ADEA retaliation claims.

## CONCLUSION

For all of the above reasons, defendants' motion for summary judgment, (Dckt. #100), is granted as to each of plaintiff's claims.

**Date: February 21, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**

---

develop his argument by citing supporting evidence.  *See, e.g., Spath v. Hays Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (citing cases); *Kovaco*, 834 F3d 142-44; *Robertson*, 949 F.3d 374 & n.2.  In any event, the Court's review has identified no evidence in the record from which an inference that there was a causal connection between plaintiff's protected conduct in mid-2016 and the VA's alleged failure to accommodate him *four* years later could be drawn.